UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-277-RGJ

ALAN RUPP Plaintiff

v.

THE COURIER JOURNAL, INC. Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

The Courier Journal, Inc. ("Defendant") moves to dismiss Alan Rupp's ("Plaintiff's") complaint [DE 12]. Briefing is complete. [DE 17; DE 18]. The matter is ripe. For the reasons below, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff owns DERBY-PIE® (the "Mark"), a federal trademark for a "well-known chocolate nut pie" sold nationwide. [DE 17 at 86]. First created in 1954 at the Melrose Inn in Prospect, Kentucky, DERBY-PIE® is handcrafted by folding "[p]remium chocolate and choice walnuts" into a "decadent filing" and baking it in a "delicate crust." DERBY-PIE®. https://derbypie.com/pages/our-story (last visited March 17, 2020). Plaintiff has "enforced the DERBY-PIE® trademark throughout the years against Bon Appetit Magazine, Sweet Streets Desserts and Nestle Foods to name but a few." DERBY-PIE®. https://derbypie.com/pages/tour-the-timeline (last visited March 17, 2020). Plaintiff is now seeking to enforce the Mark against Defendant for using it in two articles it published in 2017.

On the same day as the 2017 Kentucky Derby, Defendant published an article ("Article 1") with the headline, "Bourbon makes this Derby pie a state original." [DE 1-2 at 10]. In the article,

Defendant provided the recipe—courtesy of the "fine folks up rivers at Captain's Quarters—for a "Derby chocolate-walnut pie"[1] *Id.*



THE COURIER-JOURNAL

Chocolate-walnut bourbon pie from Captain's Quarters.

# Bourbon makes this Derby pie a state original

THE COURIER-JOURNAL

When you're headed on a vacation, the destination is what it's all about. The destination, in this case, is dessert.

This recipe from the The Courier-Journal archive — provided years ago by the fine folks up river at Captain's Quarters — it is a simple — piece of, um, pie.

It doesn't even require that you make your own pie crust.

But don't even think about using Scotch, Tennessee whiskey or that stuff from north of the border in this dessert.

**Derby chocolate-walnut pie**

1½ cups sugar
6 tablespoons flour
3 eggs, beaten
¾ cup (1½ sticks) butter, melted
1½ cups chopped walnut pieces
1½ cups chocolate chips
1½ ounces bourbon
10-inch pastry shell
Heat oven to 350 degrees
Combine sugar with flour. Beat eggs. Add to sugar mixture. Melt butter. Slowly add to sugar mixture so as not to cook eggs. Add walnut pieces, chocolate chips and bourbon. Stir to combine.
Pour into unbaked pastry shell. Bake for about 50 minutes. Pie crust will be golden brown.

*Makes 1 10-inch pie*

A few days after Defendant published Article 1, Plaintiff sent a letter to Defendant contending that Article 1 "constitutes knowing infringement" on its Mark. [DE 1-6 at 28].

In June 2017, Defendant published an article ("Article 2") about Derby City Macarons, an independent, locally owned shop specializing in macrons, the "French almond flour pastry." [DE 1-3 at 12]. Below a photograph of assorted macarons, Defendant wrote: "Derby Pie, Mint Julep

[1] For formatting purposes, the Court has separated the article into two parts. In the original, the headline, body, and recipe were published in a single column.

and Peach Tea macarons from Derby City Macarons." *Id.*



the dish

The Courier-Journal Thursday, June 22, 2017

Derby City Macarons opens new

When aspiring young baker Riana Ferleman learned she was allergic to gluten, she was crestfallen.

Baking with her mom since she was 6-years-old — when she was more interested in eating the cookie dough than making the cookies — Ferleman was a rising star at an early age.

"My mom made me enter my apple pie in the county fair," where they lived in Maryland, she said. "In middle school, my pie won first place three years in a row." An interest in further exploring flavors was sparked when her dad became interested in cooking too, she says, and the family experimented with different cuisines.

It was around that time she discovered she couldn't have gluten.

Dana McMahan

COURTESY RIANA FERLEMAN

Derby Pie, Mint Julep and Peach Tea macarons from Derby City Macarons.

In May 2018, Plaintiff filed a trademark infringement suit against Defendant, alleging that Defendant violated 15 U.S.C.A. § 1114 and 15 U.S.C.A. § 1125 of the Lanham Act by publishing the Articles. [DE 1 at 1]. Plaintiff demanded compensatory damages of $250,000 and punitive damages of $750,000. *Id.* at 5.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*,

USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## III. **DISCUSSION**

Defendant's motion advances four arguments for dismissal. [DE 12-1 at 60-61]. First, Defendant argues that "[t]he First Amendment completely protects [it] against trademark liability in the context of its newsgathering activities." *Id.* at 73. But, even if it does not, Defendant argues that Plaintiff's Complaint must be dismissed because: 1) "the infringement claim (Count I) fails because this was not a trademark use"; 2) "the dilution claim (Count II) fails because Congress has barred such claims in the context of newsgathering activities and because it only extended that protection to marks that are far more 'famous' than Plaintiff's"; and 3) "the fraud claim (Count III) fails because it was inadequately pled." *Id.*

To begin, Plaintiff has withdrawn its dilution claim (Count II). [DE 17 at 91 ("[B]ecause there is no need to address whether DERBY-PIE® is a 'famous' mark, as direct and continuing

infringement has been shown, Plaintiff withdraws his dilution claim, Count II")]. As a result, the Court dismisses Count II.

Citing *Rogers v. Grimaldi*, Defendant argues that the First Amendment provides complete immunity from Lanham Act claims. 875 F.2d 994, 999 (2d. Cir. 1989) ("The [Lanham Act] should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression"); [DE 12-1 at 63]. Defendant contends that "[c]ourts have not hesitated to apply the *Rogers* test to newsgathering activities and hold that the First Amendment prohibits newspapers from being sued for trademark infringement for news articles that happen to use a trademarked term." *Id.* at 65. But, this is untrue: no circuit courts have done this and, outside *New Kids on The Block v. News Am. Pub., Inc.*, 745 F. Supp. 1540, 1544-45 (C.D. Cal. 1990), no district courts have either. And although the Sixth Circuit adopted *Rogers* in *Parks v. LaFace Records*, 329 F.3d 437 (6th Cir.2003), it has yet to extend it from "artistic works" to "newsgathering activities." Thus, the Court will not dismiss Plaintiff's Complaint on First Amendment grounds.

**A. Trademark Claims (Count 1)**

In Count 1, Plaintiff brings claims of "statutory and common law trademark infringement, inducement of infringement, contributory infringement and false designation of origin." [DE 1 at 3].

Defendant argues that Plaintiff's trademark infringement claim fails as a matter of law because Defendant used the Mark in a non-trademark way. [DE 18 at 159 ("[N]o reasonable reader of the Courier Journal could think that the Captain's Quarters recipe for 'Derby chocolate-walnut pie,' or the caption to a story about Derby City Macarons identifying a 'Derby Pie macaron,' is an attempt to pass [Plaintiff's] products off as the Courier Journal's own")].

Plaintiff does not directly counter this argument but attempts to morph Defendant's "non-trademark" defense into a "Fair Use" and "Nominative Use" one. And although Defendant never argues "Fair Use" or "Nominative Use," Plaintiff contends that Defendant "cannot hide behind" these defenses because neither one applies to this case. [DE 17 at 98]. Plaintiff also argues that "the Courier was aware of the Captain's Quarter's Derby Pie recipe and Derby City macarons (sic) infringement—nonetheless, it either actively promoted or worse, in bad faith, it actively induced the underlying tortfeasors to infringe, providing the marketplace to do so." *Id.* at 105.

A trademark is "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C.A. § 1127 (West). To assert trademark infringement, Plaintiff must allege that: 1) he owns the registered trademark; 2) Defendant used the mark in commerce; and 3) the use was likely to cause confusion. *See* 15 U.S.C.A. § 1114(1) (West).

"In typical trademark cases, a court should determine whether a likelihood of confusion exists by examining and weighing [eight factors]."[2] *Interactive Prod. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 694 (6th Cir. 2003). "But the likelihood of confusion analysis also involves a preliminary question: whether the defendants are using the challenged mark in a way that identifies the source of their goods." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009) (quoting *Interactive*, 326 F.3d at 695) (internal quotation marks omitted). "If they are not, then the mark is being used in a non-trademark way and trademark infringement laws, along with the eight-factor analysis, do not even apply." *Id.* (internal quotation marks omitted). Put

[2] The eight factors are: 1) strength of the senior mark; 2) relatedness of the goods or services; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) likely degree of purchaser care; 7) the intent of defendant in selecting the mark; and 8) likelihood of expansion of the product lines.

differently, the "inquiry focuses on whether a consumer is likely to notice [the plaintiff's trademark] . . . and then think that the [defendant's product] may be produced by the same company[.]" *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 687 F. App'x 429, 432 (6th Cir. 2017) (quoting *Interactive*, 326 F.3d at 696).

Here, the Complaint fails to plausibly establish that Defendant used Plaintiff's Mark in any other way than a non-trademark one. In fact, Plaintiff's skeletal Complaint[3] fails to allege with specificity how there is a "likelihood of confusion." *See Hensley*, 579 F.3d at 611 ("Although Hensley Manufacturing alleges that [the advertisements at issue] create[] 'a strong likelihood of confusion in the marketplace as to the source of origin and sponsorship of the goods of the Plaintiff and the Defendant,' such a conclusory and 'formulaic recitation' of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss").

The Complaint has also not plausibly established that there is a risk of consumer confusion because both Articles explicitly and repeatedly identify the source of the product as being other than DERBY-PIE®. *See id.* (finding dismissal proper where defendant explicitly and repeatedly identified the source of the product as its own); *See Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 838 (2015) (finding banners and signs constituted non-trademark

[3] The Factual Allegations section of the Complaint is six paragraphs, but only these three describe Defendant's alleged actions in this case:

> 8. Beginning some time last year and continuing to date, Defendant has knowingly infringed upon Plaintiff's trademark, as shown in [the Articles] . . .
>
> 9. Although notified of the existence of the trademark DERBY-PIE in 1992 and before, Defendant has continued to infringe and encourage others to infringe the mark in a knowing, willful and malicious manner.
>
> 10. Immediately after the publication of [Article 1], Defendant was informed of the infringement in question . . . Barely two weeks went by until CJ decide to infringe again. [Article 2].

[DE 1 at 2-3]

use of the phrase "Welcome to the D" . . . "That the banners and signs identified *others* as the 'sources' of the messages and as the sponsors of the events underscores that the banners did not use 'Welcome to the D' as a source identifier") (emphasis in original); *See also Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639–40 (7th Cir. 2001) (finding Chicago Tribune newspaper used the Mark, "The joy of six," in a non-trademark way because it clearly identified itself, not the plaintiff, as the source of the t-shirts and memorabilia it produced with that phrase on it…The Tribune did not use the Mark " to identify itself as the source of the newspaper or the championship memorabilia. Rather, the Tribune's distinctive masthead, which appears prominently on the front page and on each piece of memorabilia containing the phrase, identifies the source of the products").

In Article 1, "Chocolate-walnut bourbon pie from Captain's Quarters" identifies the source of the recipe as Captain's Quarters, not DERBY-PIE®.[4] Moreover, the headline, "Bourbon makes this Derby pie a state original," uses "Derby" to modify "pie," not to identify the source of the product as DERBY-PIE®. This is analogous to using "Derby" to modify "horse," "hat," or "party" and does not constitute an impermissible use of the Mark. *See Sazerac Brands, LLC v. Peristyle, LLC*, No. 3:15-CV-00076-GFVT, 2017 WL 4558022, at *5 (E.D. Ky. July 14, 2017), *aff'd*, 892 F.3d 853 (6th Cir. 2018) ("[A] party does not violate trademark law solely by using words another entity has trademarked"). Because bourbon is not an ingredient in DERBY-PIE®, Defendant's use of the word "Bourbon" in the headline also indicates that this is not a recipe for DERBY-PIE®. A reader of Article 1 would not think that Defendant, a newspaper, produced DERBY-PIE®.

Article 2 likewise uses "Derby Pie" in a non-trademark way. Next to a photograph of macarons, Defendant identifies three flavors sold by Derby City Macarons: "Derby Pie, Mint Julep

[4] In the body of the article, Defendant again identifies Captain's Quarters as the source of the recipe. [DE 1-2 at 10].

and Peach Tea." A DERBY-PIE® is a pie; a Derby Pie macaron is a "French almond flour pastry." Thus, because the Defendant visually and textually links "Derby Pie" to a flavor of macaron sold by Derby City Macarons, a reader would not think that Defendant produced DERBY-PIE®.

Because Defendant used the Mark in a non-trademark way, trademark infringement laws do not apply. *See Hensley*, 579 F.3d at 610. Therefore, Plaintiff's claims in Count 1 must be dismissed.[5]

**B. Fraud Claims (Count III)**

Plaintiff brought a claim for fraud. [DE 1 at 4 ("Count III [restates the allegations in paragraphs 1-17]. The action of the Defendant constitute fraud")]. Defendant argues: 1) "Plaintiff cannot satisfy the elements of common-law fraud"; and 2) "Plaintiff's brief is utterly silent as to his fraud claim, waiving any opposition to the Courier Journal's motion to dismiss that cause of action." [DE 12-1 at 72]; [DE 18 at 155].

Common-law fraud in Kentucky requires proof of six elements: 1) that the declarant (the defendant or its agent) made a material representation to the plaintiff; (2) that this representation was false; (3) that the declarant knew the representation was false or made it with reckless disregard for its truth or falsity; 4) that the declarant intended to induce the plaintiff to act on the misrepresentation; 5) that the plaintiff reasonably relied on the misrepresentation; and (6) that the misrepresentation caused injury to the plaintiff. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky.2009) (citations omitted).

---

[5] Because Defendant did not directly infringe on Plaintiff's Mark, the Court need not consider whether Defendant is secondarily liable. *See Reliable Carriers Inc. v. Moving Sites LLC*, 309 F. Supp. 3d 473, 478 (E.D. Mich. 2018) ("To state a claim [for secondary liability], Plaintiff must first establish underlying direct infringement") (quoting *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012)). That said, Plaintiff's secondary liability arguments are unpersuasive. Plaintiff does not cite a single case in the Sixth Circuit. Moreover, the cases Plaintiff cites are inapt because, unlike the defendants in those cases, Defendant does not operate a website where it sells products that infringe on Plaintiff's Mark.

Here, it is unclear how Plaintiff's Complaint satisfies any of the elements of fraud. And because Plaintiff did not respond to Defendant's arguments about Count III, the Court declines to make his counter-arguments for him. For those reasons, the Court will dismiss Count III.

## IV. CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Defendant's Motion to Dismiss [DE 12] is **GRANTED**.

(2) The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

March 19, 2020

Copies to: Counsel of record